O

# United States District Court
# Central District of California

CHRISTIAN ALCALA,

Plaintiff,

v.

CITY OF GARDEN GROVE et al.,

Defendants.

Case № 8:25-cv-00078-ODW (DFMx)

**ORDER GRANTING THE CITY'S MOTION [46] AND GRANTING IN PART AND DENYING IN PART THE OFFICERS' MOTION [47]**

## I.    INTRODUCTION

Plaintiff Christian Alcala brings this civil rights action against Defendants, the City of Garden Grove ("City") and Garden Grove Police Department Officers Andrew Archuleta, Jose Amaya, Cody Britton, Joey Garcia, and Michael Kovacs (collectively, "Officers"), alleging violations of Alcala's rights under the United States Constitution and California law.   (First Am. Compl. ("FAC"), Dkt. No. 28.)   The City and the Officers respectively move to dismiss Alcala's First Amended Complaint ("Motions"). (City Mot. Dismiss ("City Mot."), Dkt. No. 46; Ofcr. Mot. Dismiss ("Ofcr. Mot."), Dkt. No. 47.)    For the reasons below, the Court **GRANTS** the City's Motion and **GRANTS IN PART** and **DENIES IN PART** the Officers' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND[2]

Alcala is a man of Hispanic heritage who worked during the day and cared for his minor children in the evenings while his wife worked night shifts.  (FAC ¶¶ 3, 18.)  On the evening of March 8, 2024, Alcala was home with his children when his daughter observed him "making strange noises in his sleep" and looking "unusual."  (*Id.* ¶ 19.)  Concerned for his health, Alcala's daughter called 911 and asked the operator to send emergency medical assistance for her father.  (*Id.* ¶¶ 19–20.)

When the Officers arrived at Alcala's home, his daughter "reiterated her concern that her father was experiencing a medical emergency" and told the Officers that she and Alcala's other children were unharmed.  (*Id.* ¶¶ 21, 23.)  The Officers then entered Alcala's bedroom and found him lying in bed face-up and motionless.  (*Id.* ¶ 24.)

Seeing Alcala like this, the Officers erroneously determined that he was under the influence of drugs.  (*Id.* ¶¶ 25–26.)  Accordingly, they turned Alcala onto his stomach, climbed onto his back, and used "violent control holds" to restrain him.  (*Id.* ¶ 28.)  Specifically, Officer Amaya handcuffed and arrested Alcala.  (*Id.* ¶ 30.)  Officer Archuleta used a "forced control hold" to restrain Alcala, causing Alcala to cry out in pain.  (*Id.* ¶ 29.)  Meanwhile, Officer Britton held down Alcala's head and shoulders, Officer Garcia "applied his bodyweight to [Alcala's] upper back and shoulders," and Officer Kovacs restrained Alcala's feet and ankles.  (*Id.* ¶¶ 31–33.)  At no point during this interaction did the Officers offer Alcala medical assistance.  (*Id.* ¶ 34.)

Following his arrest, Alcala was charged with being under the influence of a controlled substance and child endangerment.  (*Id.* ¶¶ 25, 155.)  During the pendency of those charges, Alcala was temporarily incarcerated and lost his job.  (*Id.* ¶¶ 36, 40.)  Additionally, Child Protective Services ("CPS") intervened, launching an independent

---

[2]  All factual references derive from Alcala's First Amended Complaint unless otherwise noted.  Alcala's well-pleaded factual allegations are accepted as true for purposes of resolving the Motions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

investigation into and levying dependency charges against Alcala. (*Id.* ¶¶ 37, 39.) CPS temporarily removed Alcala's children from his custody. (*Id.* ¶ 37.)

Based on these allegations, Alcala advances thirteen causes of action against the City and the Officers. Alcala asserts the following seven causes of action under 42 U.S.C. § 1983: (1) unlawful arrest against the Officers (Count 1); (2) excessive force against Officers Archuleta and Amaya (Count 2); (3) denial of medical care against the Officers (Count 3); (4) unlawful interference with familial relations against the Officers (Count 4); (5) unconstitutional custom, practice, or policy under *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978), against the City (Count 5); (6) failure to train under *Monell* against the City (Count 6); and (7) ratification under *Monell* against the City (Count 7). (*Id.* ¶¶ 42–151.) Alcala also asserts the following six state law causes of action against both the City and the Officers: (1) violation of the Ralph Civil Rights Act ("Ralph Act"), Cal. Civ. Code § 51.7 (Count 8); (2) violation of the Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1 (Count 9); (3) assault (Count 10); (4) battery by a peace officer (Count 11); (5) intentional infliction of emotional distress ("IIED") (Count 12); and (6) negligence (Count 13). (*Id.* ¶¶ 152–224.)

The City and the Officers respectively move to dismiss Alcala's First Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (City Mot.; Ofcr. Mot.) The Motions are fully briefed. (Opp'n City Mot., Dkt. No. 48; City Reply, Dkt. No. 49; Opp'n Ofcr. Mot., Dkt. No. 50; Ofcr. Reply, Dkt. No. 51.)

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable theory or insufficient facts pleaded to support an otherwise cognizable theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones,* 319 F.3d 482, 494 (9th Cir. 2003). The factual allegations in the complaint "must be

enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated differently, the complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Determining whether a complaint states a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Generally, a court limits its review to the pleadings and must construe all factual allegations in the complaint "as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.    DISCUSSION

The Officers and the City each move to dismiss Alcala's First Amended Complaint.

## A.    The Officers' Motion

The Officers argue the Court should dismiss the First Amended Complaint as an impermissible "shotgun pleading" or, alternatively, because Alcala's allegations are legally insufficient to plausibly state a claim for relief under any of the ten causes of action that Alcala asserts against them. (*See* Ofcr. Mot. 10–27; *see* FAC ¶¶ 42–94 (Counts 1 through 4), 152–224 (Counts 8 through 13).)

### 1.    Shotgun Pleading

A "shotgun pleading" can take several forms, including a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320, 1323 (11th Cir. 2015); *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming dismissal of complaint alleging that "everyone did everything"). Such a

pleading thus runs afoul of Rule 8(a)(2)'s and Rule 10(b)'s mandates directing pleaders to clearly, discretely, and succinctly present their claims or defenses.  *See Weiland*, 792 F.3d at 1320, 1323.  It also fails to give defending parties adequate notice of the claims against them and the grounds for each claim.  *See id.*

The Officers assert that Alcala's First Amended Complaint is a "shotgun pleading" because it frequently groups multiple officers together under the umbrella term "Officer Defendants" without differentiating between each officer's individual conduct or involvement.  (Ofcr. Mot. 10, 12–13.)  Alcala counters by listing twenty-eight paragraphs that he asserts "allege[] facts specifying the wrongdoing of each officer, and the legal basis for them."  (Opp'n Ofcr. Mot. 4–5.)

The Officers' argument is not without merit.  Certain of Alcala's claims assert collective references that do not specify which officer is responsible for which misconduct.  (*See generally* FAC ¶¶ 86–94 (alleging the "Officer Defendants and Does 6–8[], inclusive," acted with "deliberate indifference" when they "intentional[ly] violat[ed] . . . [Alcala's] civil rights, resulting in the unlawful removal of [Alcala's] children" (emphasis omitted)), 152–223 (alleging that "the Officer Defendants and Does 6–8" engaged in discriminatory, coercive, outrageous, and negligent conduct (emphasis omitted).)  Grouping the Officers together in this manner can make the task of discerning the precise factual basis for each claim against each individual officer challenging.  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (explaining that allegations must be sufficient "to give fair notice and to enable the opposing party to defend itself effectively"); *see also Destfino*, 630 F.3d at 958 (affirming dismissal of "shotgun pleading" that grouped multiple defendants together and failed to specify which defendants engaged in which conduct).

As challenging as this task might be, however, the Court is disinclined to dismiss Alcala's pleading on this ground.  Alcala does allege certain specific involvement and actions by each named officer during his arrest.  (*See, e.g.*, FAC ¶¶ 26, 29–33, 45–49, 78–83.)  Given the content of those factual allegations, dismissing the First Amended

Complaint solely on shotgun grounds would be disproportionate.  Accordingly, the Court **DENIES** the Officers' Motion to Dismiss the First Amended Complaint as a shotgun pleading.

### 2.    Federal Causes of Action: § 1983

The Officers move to dismiss each of Alcala's § 1983 claims as insufficiently pleaded.  (Ofcr. Mot. 14–22.)  Alcala largely resists the Officers' Motion by referring the Court to certain paragraphs in his pleading and conclusively asserting that his claims are sufficiently alleged.  (Opp'n Ofcr. Mot. 5–13.)

To state a claim under § 1983, a plaintiff must prove that (1) they were "deprived of a right secured by the Constitution or laws of the United States," and (2) "the alleged deprivation was committed under color of state law."  *March v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).  Here, it is undisputed that the Officers acted under color of state law.  (*See* FAC ¶¶ 43, 55; *see generally* Ofcr. Mot.)  Therefore, the Court focuses its analysis on whether Alcala plausibly alleges that the Officers deprived him of any particular constitutional guaranty.

### (i)    Unlawful arrest (Count 1)

Alcala first claims the Officers violated the Fourth Amendment by unlawfully arresting him without a warrant or probable cause.  (FAC ¶¶ 42–53.)

The Fourth Amendment guarantees the right of citizens to be "secure in their persons[] [and] houses . . . against unreasonable . . . seizures."  U.S. Const. amend. IV.  Critically, the Fourth Amendment "does not proscribe all state-initiated . . . seizures; it merely proscribes those which are unreasonable."  *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).  Reasonableness is thus the touchstone of any Fourth Amendment inquiry.  *Id.*

The arrest of a person by physical force with lawful authority is a quintessential seizure under the Fourth Amendment.  *Torres v. Madrid*, 592 U.S. 306, 311 (2021).  Where police officers effect a warrantless arrest in the home, that arrest is "presumptively unreasonable."  *United States v. Alvarez*, 810 F.2d 879, 881 (9th Cir.

1987) (citing *Payton v. New York*, 445 U.S. 573, 586–89 (1980)).  A warrantless arrest in the home may be reasonable for Fourth Amendment purposes, however, if "both probable cause and exigent circumstances" exist.  *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009); *Welsh v. Wisconsin*, 466 U.S. 740, 741 (1984) ("[A]bsent probable cause and exigent circumstances, warrantless arrests in the home are prohibited by the Fourth Amendment.")  An officer has probable cause to make an arrest when the facts and circumstances known to them at the time of the arrest would cause "a reasonably prudent person to believe that the suspect ha[d] committed a crime."  *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011).  "Mere suspicion, common rumor, or even strong reason to suspect are not enough" to establish probable cause. *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984) (citing *Henry v. United States*, 361 U.S. 98, 101 (1959)).  "Probable cause is [also] lacking if the circumstances relied on are susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities."  *Gasho v. United States*, 39 F.3d 1420, 1432 (9th Cir. 1994) (citation modified).

The Court's starting point here is uncontroversial: the Officers' warrantless arrest of Alcala in his home is presumptively unreasonable under the Fourth Amendment absent both exigent circumstances and probable cause.  *Alvarez*, 810 F.2d at 881; *Hopkins*, 573 F.3d at 773.  As neither party disputes that the Officers were permitted to enter Alcala's home to investigate the emergency to which they were originally dispatched,[3] the only remaining issue is whether Alcala plausibly alleges the Officers lacked probable cause to arrest him.  *See Yousefian*, 779 F.3d at 1014 ("The absence of probable cause is a necessary element of § 1983 false arrest . . . claims.").  The Court finds that he does.

---

[3] Courts in this circuit have recognized that law enforcement's community caretaking function under the emergency exception to the Fourth Amendment's warrant requirement may permit police officers to enter a home without a warrant to investigate an emergency.  *See Hopkins*, 573 F.3d at 763; *Yousefian v. City of Glendale*, No. 2:11-cv-03579-DMG (MANx), 2012 WL 12849427, at *9 n.6 (C.D. Cal. Nov. 19, 2012), *aff'd*, 779 F.3d 1010 (9th Cir. 2015).

Alcala alleges that his daughter contacted 911 seeking emergency "medical assistance" for Alcala. (FAC ¶¶ 19–20.) The Officers were dispatched to Alcala's home, where his daughter reiterated her concern that he was experiencing a medical emergency and confirmed that his children were unharmed. (*Id.* ¶¶ 21, 23.) The Officers then entered Alcala's bedroom, where they observed Alcala motionless in his bed. (*Id.* ¶ 24.) Alcala was unarmed and, in his condition, unable to harm anyone. (*Id.* ¶¶ 21, 24.) Based on these facts, the Officers "formed the belief that [Alcala] was under the influence of drugs" and arrested him. (Ofcr. Mot. 15; FAC ¶ 25.)

These facts, taken together as true, plausibly establish that the Officers lacked probable cause to arrest Alcala. The Officers inferred drug use based solely from ambiguous physical symptoms that are at least equally consistent with symptoms denoting a legitimate medical concern. These symptoms are "susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities," *Gasho*, 39 F.3d at 1432, and thus fall short of satisfying the Fourth Amendment's objective probable cause standard, *see McKenzie*, 738 F.2d at 1008. The Officers' factually unadorned argument that "there was reasonable suspicion or probable cause" to support their belief is conclusory and only underscores the deficiency of their assessment. (Ofcr. Mot. 15.)

The Court therefore finds that Alcala plausibly alleges an unlawful arrest claim under § 1983. As Alcala's allegations implicate all of the named Officers in the arrest, (*see* FAC ¶¶ 29–33), the Court **DENIES** the Officers' Motion as to Alcala's first cause of action.

(ii)    Excessive force (Count 2)

Alcala next claims Officers Archuleta and Amaya violated the Fourth Amendment by using "excessive and unreasonable force" to restrain, handcuff, and arrest Alcala. (FAC ¶¶ 54–73.) The Officers acknowledge that "some force was used" but argue that Alcala's allegations are insufficient to establish that such force was excessive. (Ofcr. Mot. 16–17 (emphasis omitted).)

Excessive force claims are analyzed under the Fourth Amendment's reasonableness standard, which requires courts to balance the extent of the challenged intrusion against law enforcement's legitimate interests under the circumstances. *Graham v. Connor*, 490 U.S. 386, 395–97 (1986). In balancing these competing privacy and law enforcement interests, courts consider (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat, and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Id.* at 396. In so doing, however, courts must be mindful of "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Alcala plausibly states a claim for excessive force against Officers Archuleta and Amaya. First, the severity of Alcala's perceived crime was minimal. The alleged basis for Alcala's arrest was the relatively minor misdemeanor offense of being under the influence of a controlled substance. *See* Cal. Health & Safety Code § 11550; (FAC ¶ 155). Second, Alcala posed no threat to the Officers. As alleged, Alcala was motionless, bedridden, unarmed, and unable to harm anyone. (FAC ¶¶ 21, 24.) Third, Alcala did not resist or attempt to evade arrest. His only action was to cry out in pain when Officer Archuleta used a forced control hold on him. (FAC ¶¶ 24, 29.)

On balance, these factors suggest that Officers Archuleta and Amaya's interest in using force against Alcala was minimal. *See Liston v. County of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997) (explaining that the force used in an arrest "must be balanced against the *need* for th[e] force[,] . . . which is at the heart of the *Graham* factors"). Yet, despite the absence of aggravating circumstances, Officer Archuleta used a "forced control hold" on Alcala while Officer Amaya "forcibly restrained . . . and handcuffed" Alcala. (FAC ¶¶ 29–30.) Their use of painful force on a non-resisting, non-threatening, and motionless individual like Alcala plausibly constitutes excessive force. *See, e.g.*, *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) (finding use of chokehold on non-resisting, restrained person violated the Fourth Amendment's prohibition on the

use of excessive force).  Accordingly, the Court **DENIES** the Officers' Motion as to Alcala's second cause of action.

(iii)    Denial of medical care (Count 3)

Alcala next claims the Officers collectively and with deliberate indifference denied him necessary medical care in violation of the Fourteenth Amendment.  (FAC ¶¶ 74–85.)  The Officers move to dismiss, arguing that no objectively serious medical need was apparent, and their response was reasonable under the circumstances.  (Ofcr. Mot. 17–20.)

Claims for the denial or deficient provision of medical care during or immediately following an arrest are analyzed under the Fourth Amendment.  *Mejia v. City of San Bernardino*,  No. 5:11-cv-00452-VAP  (DTBx),  2012 WL  1079341,  at *5  n.12 (C.D. Cal. Mar. 30, 2012) (citing *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1098–99 (9th Cir. 2006)); (*see also* Opp'n Ofcr. Mot. 8–9 (clarifying that Alcala's denial-of-medical-care claim arises under the Fourth Amendment, not the Fourteenth Amendment).  The Fourth Amendment requires law enforcement officers to provide objectively reasonable post-arrest care to an apprehended suspect.  *Tatum*, 441 F.3d at 1099.  Although the Ninth Circuit has not defined the contours of "objectively reasonable post-arrest care," district courts have examined such factors as the promptness of the care, the seriousness of the medical need, and whether law enforcement officers had knowledge or notice of the medical need.  *Purnell v. City of Sunnyvale Police Dep't*, No. 5:18-cv-02113-EJD, 2019 WL 587287, at *2 (N.D. Cal. Feb. 13, 2019); *Espinoza v. Cal. Highway Patrol*, No. 1:16-cv-00193-DAD-JLT, 2016 WL 4943960, at *3 (E.D. Cal. Sept. 16, 2016).

Alcala fails to plausibly state a denial-of-medical-care claim.  First, Alcala does not adequately allege facts supporting the inference that, at the time of his arrest, he was experiencing a serious injury that required prompt medical treatment.  He alleges that he experienced "a medical emergency" and "extreme mental and physical pain and suffering, and great bodily harm," that he later attributes to diverticulosis.  (FAC ¶¶ 24,

76, 83.)   But these allegations are conclusory and devoid of any supportive detail describing the nature, extent, and severity of his alleged injury.  *See Purnell*, 2019 WL 587287, at *3 (dismissing denial-of-medical-care claim where plaintiff failed to describe "the nature, extent[,] and severity" of injuries or allege that a reasonable officer would have known they "posed a serious risk" and required immediate care).

Second, Alcala does not plead sufficient facts to permit the Court to infer that the Officers knew at the time of arrest that Alcala was in the throes of a medical emergency posing a serious risk to his health or requiring immediate medical attention.  Alcala alleges he was motionless and in bed when the Officers found him.  (FAC ¶ 24.)  His only explicit outward reaction was a cry of pain when Officer Archuleta restrained him. (*Id.* ¶ 29.)  As Alcala alleges, not even he knew what ailed him, much less whether that ailment posed a serious risk to his health.  (*Id.* ¶ 20.)  The First Amended Complaint contains no allegations that Alcala or his daughter told the Officers he required emergency medical treatment.  It also does not contain any allegation that Alcala suffered any visible symptom—such as bleeding, vomiting, convulsions, impaired breathing, or altered consciousness—that would have put a reasonable police officer on alert that Alcala was experiencing a true medical emergency.  Without such allegations, the Court cannot infer the Officers knew that Alcala required immediate medical assistance.

For the reasons discussed above, Alcala ultimately fails to state a cognizable denial-of-medical-care claim.   The deficiencies above, though potentially curable through amendment, prevent the Court from finding that Alcala has stated a cognizable claim at this stage.   Accordingly, the Court **GRANTS** the Officers' Motion and **DISMISSES** Alcala's third cause of action **WITH LEAVE TO AMEND**.

### (iv)   Interference with familial relations (Count 4)

Alcala next claims the Officers unlawfully interfered with his Fourteenth Amendment right to maintain a familial relationship with his children by

directly and proximately causing CPS to remove Alcala's children from his custody.
(FAC ¶¶ 86–94.)

The Fourteenth Amendment confers on parents a "substantive due process right
to family integrity or to familial association." *Rosenbaum*, 663 F.3d at 1079.  To state
a claim for interference with familial relations, a plaintiff must allege that state actors
engaged in conduct that "shocks the conscience." *Porter v. Osborn*, 546 F.3d 1131,
1137 (9th Cir. 2008).  Where it is practical for the state actor to "actual[ly] deliberate,"
their conduct is conscience-shocking when they act with deliberate indifference.
*Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  A state actor acts with
deliberate indifference when they "recognize[] the unreasonable risk and actually
intend[] to expose the plaintiff to such risks without regard to the consequences to the
plaintiff." *Herrera v. L.A. Unified Sch. Dist.*, 18 F.4th 1156, 1158 (9th Cir. 2021)
(alterations in original).

A plaintiff must also plausibly establish that the state actor actually and
proximately caused their constitutional injury. *See Chaudhry v. Aragón*, 68 F.4th 1161,
1169–70 (9th Cir. 2023).  Proximate cause demands a "sufficient connection to the
result" that is not "so attenuated that the consequence is more aptly described as mere
fortuity." *Id.* at 1169 n.12.  A plaintiff may establish proximate cause by showing the
state actor "set[] in motion a series of acts by others which the actor knows or reasonably
should know would cause others to inflict the constitutional injury." *Id.* at 1169.
Intervening acts, however, may sever the causal chain and thus vitiate proximate cause.
*Caldwell v. City & County of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018).  In
cases involving prosecutorial discretion, for example, courts presume the prosecutor
who files charges "exercise[s] independent judgment," thereby immunizing the
investigating officers from liability. *Id.*  This presumption can be overcome only if a
plaintiff shows the "officers either presented false evidence to or withheld crucial
information from the prosecutor." *Id.* at 1116.

1      Alcala fails to state a claim for unlawful interference with familial relations for
2  two independent reasons.    First, Alcala does not adequately allege the Officers
3  proximately caused CPS to remove Alcala's children from his custody.  California law
4  requires child welfare agencies like CPS to exercise independent, professional judgment
5  and apply carefully delineated child welfare criteria to custody and removal
6  determinations.  *See, e.g.*, Cal. Welf. & Inst. Code §§ 300, 306(a), 16501(f), 16501.1;
7  Cal. Dep't of Soc. Servs., Manual of Policies and Procedures: Social Service Standards,
8  div. 31-125 (2023).  The Ninth Circuit and district courts likewise recognize that child
9  services workers exercise independent judgment in determining whether and when to
10  bring and pursue custody or dependency proceedings and that such judgment is
11  analogous to the function of a criminal prosecutor.  *See, e.g.*, *Meyers v. Contra Costa
12  Cnty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987) ("[S]ocial workers are
13  entitled to absolute immunity in performing quasi-prosecutorial functions connected
14  with the initiation and pursuit of child dependency proceedings."); *Alberici v. County
15  of Los Angeles*, No. 2:12-cv-10511-JFW (VBKx), 2013 WL 5573045, at *13 (C.D. Cal.
16  Oct. 9, 2013) ("[A]ctions by a child services worker in exercising independent judgment
17  in determining when to bring custody or dependency proceedings is analogous to the
18  function of a criminal prosecutor.").    Here, Alcala's well-pleaded allegations
19  demonstrate that CPS exercised its independent and professional judgment in deciding
20  to investigate Alcala, levy dependency charges against him, and temporarily remove his
21  children from his custody.  (FAC ¶¶ 37–39.)  CPS's independent decision-making thus
22  presumptively severed the causal chain connecting the Officers' arrest of Alcala to
23  CPS's custody removal determination.  *See Caldwell*, 889 F.3d at 1115–16.
24      To the extent Alcala alleges that CPS's removal decision was a "foreseeable
25  outcome" and that that the Officers "knew or should have known" their actions would
26  trigger CPS involvement, (*see* FAC ¶ 36), those allegations are inadequate to overcome
27  the presumption of independent judgment and bridge the causation gap, *see Caldwell*,
28  889 F.3d at 1116.  In sum, Alcala fails to explain how CPS's custody removal decision

was a foreseeable consequence of his arrest rather than a contingent outcome dependent on CPS's exercise of its independent, professional judgment. Thus, Alcala fails to show that the Officers' alleged constitutional violation proximately caused CPS to remove Alcala's children from his custody.

Second, Alcala does not adequately allege conscience-shocking conduct. Alcala asserts that the Officers' actions "were [not] in furtherance [of] or related to any legitimate penal or law enforcement interest and are therefore consciously shocking [sic] as they exhibit a deliberate and intentional indifference to [Alcala's] rights." (FAC ¶ 88.) But such factually unenhanced and conclusory statements are insufficient to state a claim under § 1983. *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (holding that conclusory allegations are insufficient to state a § 1983 claim). None of Alcala's allegations support the inference that the Officers actually knew of and consciously disregarded the risk to Alcala's familial rights. *See Herrera*, 18 F.4th at 1158–59 ("[A] state actor needs to know that something is going to happen but ignore the risk and expose the plaintiff to it." (citation modified)). Even accepting Alcala's allegations that the Officers' actions were mistaken or wrongful, "negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

Accordingly, the Court **GRANTS** the Officers' Motion and **DISMISSES** Alcala's fourth cause of action **WITH LEAVE TO AMEND**.

### 3. *State Law Causes of Action*

The Officers move to dismiss Alcala's state law claims for violation of the Ralph Act, violation of the Bane Act, assault, battery by a peace officer, IIED, and negligence as insufficiently pleaded and conclusory. (Ofcr. Mot. 22–27).

#### (i)    Ralph Act (Count 8)

Alcala claims the Officers violated the Ralph Act because the Officers based their assumption that Alcala was under the influence of drugs on his Hispanic heritage. (FAC

¶¶ 152–62.)  Alcala further suggests that the City is vicariously liable for the Officers' conduct.  (*Id.* ¶¶ 154–55.)

The Ralph Act protects the right of all persons within California's jurisdiction to be free from violence or intimidation "because of" a protected characteristic, including race.  Cal. Civ. Code §§ 51, 51.7(b)(1).  To state a claim under the Ralph Act, a plaintiff must show: (1) the defendant committed or threatened violent acts against him or his property, (2) a motivating reason for the defendant's conduct was the plaintiff's protected characteristic, (3) the plaintiff was harmed, and (4) the defendant's conduct was a substantial factor in causing the plaintiff harm.  *See Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880–81 (2007).

Alcala fails to plausibly state a Ralph Act claim.  Relying solely on the Officers' alleged misassumption that Alcala was under the influence of drugs, Alcala presumes the Officers' decision to arrest and use force on Alcala was "racially motivated by their perception of [Alcala] as a male of Hispanic heritage."  (FAC ¶ 156.)  But the fact that the Officers allegedly made an unsupported assumption of drug use, standing alone, does not plausibly suggest race or ethnicity was a motivating factor in the Officers' arrest of or use of force on Alcala.

The Officers went to Alcala's home after his daughter contacted 911 and explained her concerns about Alcala's symptoms to the 911 operator.  (*Id.* ¶ 24.)  The Officers were dispatched to Alcala's home, where they observed Alcala lying in bed motionless.  (*Id.* ¶¶ 21, 24.)  However, neither these nor any of Alcala's other allegations plausibly support his conclusory inference that the Officers' engaged in their challenged conduct "because of [Alcala's] Hispanic heritage."  (*Id.* ¶ 100.)  On the contrary, considering these allegations, the Officers' allegedly mistaken assumption of drug use could equally be attributed to Alcala's daughter's description of his symptoms to the 911 operator, the Officers' personal observations of Alcala's motionless and bedridden state, or other non-race and non-ethnic factors.  The Court need not blindly accept Alcala's conclusory and speculative allegations to the contrary, which are insufficient

to withstand a motion to dismiss. *Sprewell*, 266 F.3d at 988; *see Rodriguez v. Orange County*, No. 3:23-cv-00823-TJW (DDLx), 2023 WL 6472000, at *7 (S.D. Cal. Oct. 4, 2023) (dismissing Ralph Act claim based on conclusory race allegations); *Garcia v. Diaz*, No 5:20-cv-02564-FLA (MAAx), 2021 WL 4775638, at *12 (C.D. Cal. July 14, 2021) ("Conclusory allegations that Defendants' conduct was due to Plaintiff's race are insufficient to state a Ralph Act claim.").

Accordingly, the Court **GRANTS** the Officers' and the City's Motions and **DISMISSES** Alcala's eighth cause of action **WITH LEAVE TO AMEND**.

### (ii)    Bane Act (Count 9)

Alcala next claims the Officers violated the Bane Act by interfering with Alcala's Fourth Amendment rights through "threats, intimidation, or coercion." (FAC ¶¶ 163–75.) He further alleges the City is vicariously liable for the Officers' conduct. (*Id.* ¶ 172.) The Officers argue that Alcala fails to state a claim because he does not adequately allege the Officers acted with specific intent to violate his constitutional rights. (Ofcr. Mot. 24.)

To state a Bane Act claim, a plaintiff must show that the defendant interfered with their constitutional rights "by threat, intimidation, or coercion." Cal. Civ. Code § 52.1(b). Unlike a § 1983 claim, a Bane Act claim requires a plaintiff to prove the defendant acted with specific intent to interfere with the plaintiff's rights. *Reese v. County of Sacramento*, 888 F.3d 1030, 1044 (9th Cir. 2018). Specific intent may be shown through evidence that the defendant acted in "reckless disregard" of the plaintiff's constitutional rights. *Id.* at 1045.

Alcala fails to state a Bane Act claim. Alcala identifies his alleged unlawful arrest and the Officers' alleged use of excessive force as the constitutional bases for his claim. (FAC ¶ 165.) These actions could constitute coercion. However, Alcala's pleading lacks factual allegations plausibly suggesting the Officers acted with specific intent to deprive Alcala of his Fourth Amendment rights, as opposed to simply acting unreasonably under the circumstances. Alcala's allegations that the Officers

"intentionally and deliberately denied each of [Alcala's] rights . . . by threats, intimidation, or coercion" are conclusory and do not adequately fill that pleading gap. (*Id.* ¶ 164); *Leff v. City of Garden Grove*, No. 8:19-cv-010340-AG (ADSx), 2019 WL 6357970, at *4 (C.D. Cal. Oct. 7, 2019) (dismissing Bane Act claim because intent allegations were conclusory); *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 69 (2015) (explaining that "coercion [is] inherent in any arrest" and that "a wrongful arrest or detention, without more, does not satisfy both elements of [the Bane Act]"). As Alcala fails to adequately plead a Bane Act violation as to the Officers, vicarious liability cannot attach to the City. *Segura v. City of San Bernardino*, No. 5:22-cv-00277-JGB (SPx), 2024 WL 4579144, at *13 (C.D. Cal. Mar. 20, 2024).

Accordingly, the Court **GRANTS** the Officers' Motion and **DISMISSES** Alcala's ninth cause of action **WITH LEAVE TO AMEND**.

(iii)    Assault and battery (Counts 10 and 11)

Alcala next claims the Officers assaulted and battered him, and that the City is vicariously liable for the Officers' tortious conduct. (FAC ¶¶ 176–200.)

Under California law, a plaintiff asserting assault and battery claims against peace officers acting in their official capacities must prove the officers used "unreasonable force." *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) (quoting *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 (2004)). "Claims that police officers used excessive force in the course of an arrest . . . or other seizure of a free citizen are analyzed under the reasonableness standard of the Fourth Amendment . . . ." *Id.* (quoting *Munoz*, 120 Cal. App. 4th at 1102). Here, as Alcala plausibly states an excessive force claim against Officers Archuleta and Amaya under § 1983, the Court finds that Alcala's parallel state law claims against these Officers are also plausible.

As to Officers Britton, Garcia, and Kovacs, Alcala abandons his assault and battery claims and concedes dismissal of those claims "without prejudice." (Opp'n Ofcr. Mot. 15 n.2.) However, when a plaintiff abandons or fails to oppose an argument

addressing a particular claim in a motion to dismiss, courts routinely treat that abandonment or failure as the plaintiff's assent to dismissal with prejudice. *Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1054–55 (C.D. Cal. 2015) (collecting cases); *see Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) ("[W]here a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice." (internal quotation marks omitted)).  Alcala is uniquely positioned to allege facts that could support an assault or battery claim against Officers Britton, Garcia, and Kovacs.  His express abandonment and failure to allege such facts demonstrate that there is nothing left to plead.  By voluntarily abandoning and conceding dismissal of his claims, Alcala effectively agrees the Court may treat his abandonment as final and dismiss the abandoned claims with prejudice.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the Officers' Motion as to Alcala's tenth and eleventh causes of action.  Specifically, the Court **DISMISSES** Alcala's tenth and eleventh causes of action as to Officers Britton, Garcia, and Kovacs **WITHOUT LEAVE TO AMEND** and **WITH PREJUDICE**. The Court **DENIES** dismissal of these causes of action as to Officers Archuleta and Amaya directly and as to the City vicariously.

(iv)    IIED (Count 12)

Alcala next claims the Officers are liable for IIED because they unlawfully arrested Alcala using unreasonable force and "with reckless disregard for the effect that these actions and omissions would have []on Alcala, including emotional distress." (FAC ¶¶ 201–12.)  Alcala further asserts that the City is vicariously liable for the Officers' tortious conduct.  (*Id.* ¶ 211.)

To state an IIED claim, a plaintiff must plead: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by

the defendant's outrageous conduct." *Tekle v. United States*, 511 F.3d 839, 855
(9th Cir. 2007) (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982)).
The extreme and outrageous conduct required to sustain an IIED claim must be so
"extreme as to exceed all bounds of that usually tolerated in a civilized community."
*Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).  Such conduct must cause "emotional
distress of such substantial quality or enduring quality that no reasonable [person] in
civilized society should be expected to endure it." *Id.* at 1051 (alteration in original).
"And the defendant's [outrageous] conduct must be intended to inflict [such severe
emotional distress] or engaged in with the realization that [such] injury will result." *Id.*
(citation modified).

Alcala fails to plausibly establish the first two elements of his IIED claim.  Alcala
alleges that the Officers acted "outrageous[ly]" by unlawfully arresting Alcala and
using force on him "without any lawful justification."  (FAC ¶¶ 105, 202.)  An unlawful
arrest by law enforcement and their use of excessive force may constitute outrageous
conduct.  *See Gonzalez v. City of Tustin*, No. 8:23-cv-01274-FWS (ADSx), 2023 WL
9689159, at *13 (C.D. Cal. Dec. 28, 2023) ("The conduct underlying an excessive force
claim can qualify as 'outrageous conduct' for purposes of an [IIED] claim.").  However,
Alcala fails to allege how the Officers' alleged unreasonable conduct was "so extreme
and outrageous as to exceed all bounds that are usually toler[ated] in a civilized
community." *Gerritsen v. L.A. Cnty. Metro. Transp. Auth.*, No. 2:22-cv-06052-RGK
(KSx), 2023 WL 4291441, at *7 (C.D. Cal. Mar. 14, 2023); *see Rivera v. City of Santa
Ana*, No. 8:09-cv-01233-DOC (RNBx), 2011 WL 717369, at *10 (C.D. Cal. Feb. 18,
2011) (holding that a "[p]laintiff may not succeed in his [IIED] claim merely by proving
that [d]efendants' conduct was 'unreasonable'").  This pleading shortcoming is fatal to
his IIED claim. *Gerritsen*, 2023 WL 4291441, at *7 (dismissing plaintiff's IIED claim
because the allegations of extreme and outrageous conduct were conclusory).

Similarly fatal are Alcala's broad-stroke assertions that he suffered "great bodily
harm and emotional distress," and that he "continues to suffer from emotional distress,

1  pain, suffering, paranoia, and depression." (FAC ¶¶ 203, 207.) Without any attendant

2  factual allegations to support such symptoms or conditions, Alcala's assertions are

3  inadequate to plausibly establish that he suffered or is suffering the sort of severe

4  emotional distress required to state a claim for IIED. *See Schultz v. Stericycle, Inc.*,

5  No. CV F 13-01244-LJO MJS, 2013 WL 4776517, at *8 (E.D. Cal. Sept. 4, 2013)

6  (finding plaintiff's "sweeping references to 'pain and suffering, extreme and severe

7  mental anguish, and emotional distress,' with no facts to support such symptoms or

8  conditions," failed to meet the "severe emotional distress" prong).

9      Further, as Alcala fails to plausibly state an IIED claim against the Officers,

10  vicarious liability against the City cannot attach. *Black v. City of Blythe*, 562 F. Supp.

11  3d 820, 832 (C.D. Cal. 2022). Accordingly, the Court **GRANTS** the Officers' Motion

12  and **DISMISSES** Alcala's twelfth cause of action **WITH LEAVE TO AMEND**.

13              (v)    Negligence (Count 13)

14      Alcala next claims the Officers breached their duty of care by unlawfully

15  arresting Alcala and using excessive force in furtherance of the arrest. (FAC ¶¶ 215,

16  217–18.) Alcala also asserts that the City is vicariously liable for the Officers' breach

17  and directly liable for negligent hiring, supervision, training, and failure to implement

18  protective standards that would have prevented harm to Alcala. (*Id.* ¶¶ 216, 220–22.)

19      To the extent Alcala advances direct-liability negligence claims against the City,

20  those claims must be dismissed because they are not cognizable under California law

21  absent statutory authorization. *See Johnson v. Shasta County*, 83 F. Supp. 3d 918, 936

22  (E.D. Cal. 2015) ("With respect to hiring and supervision practices, . . . there is no

23  statutory basis under California law for declaring a[] [governmental] entity directly

24  liable for negligence."); *Black*, 562 F. Supp. 3d at 833 n.3 (same); *see also Munoz*,

25  120 Cal. App. 4th at 1112–13 (holding municipality could not be directly liable based

26  on negligent training and supervision or failure to promulgate clearer procedures).

27      Moreover, "California law does not recognize a general duty of care on the part

28  of supervisors with respect to negligent hiring, retention, or training." *Estate of Osuna*

*v. County of Stanislaus*, 392 F. Supp. 3d 1162, 1182 (E.D. Cal. 2019). Although California courts "recognize[] the existence of a 'special relationship' between arresting officers and arrestees," the issue here is "whether the supervisors responsible for hiring, training, disciplining, and so forth had such a special relationship [with the arrestees]." *Id.* at 1183. Alcala fails to plead any such special relationship between himself and the City's employees who hire, train, or discipline police officers. Therefore, he fails to state a negligence claim against the City on this basis.

Finally, as to the Officers, Alcala bases his negligence claim on the Officers' "seizure [of Alcala] through uses of unreasonable and excessive force" in violation of the Fourth Amendment. (FAC ¶ 215.) The reasonableness inquiry in the Fourth Amendment context is the same analysis used in determining reasonableness under California negligence law. *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 513–14 (2009). As Alcala plausibly states Fourth Amendment claims for unlawful arrest against Officers Britton, Garcia, Kovacs, Archuleta, and Amaya, and excessive force against Officers Archuleta and Amaya, the Court finds that Alcala's parallel negligence claim on the same grounds is also plausibly stated. *See, e.g.*, *Conta v. City of Huntington Beach*, No. 8:21-cv-01897-JLS (KESx), 2022 WL 18278391, at *5 (C.D. Cal. Dec. 5, 2022) ("[A] negligence claim may proceed against officers for using excessive force in effecting an arrest."). Alcala's vicarious liability claim against the City on these same grounds is also plausible. *Id.*

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the Officers' Motion as to Alcala's negligence cause of action as follows. The Court **DISMISSES** this cause of action as to Officers Britton, Garcia, and Kovacs for excessive force **WITHOUT LEAVE TO AMEND** and **WITH PREJUDICE**. The Court further **DISMISSES** this cause of action against the City to the extent it is predicated on a direct-liability theory **WITHOUT LEAVE TO AMEND** and **WITH PREJUDICE**. Alcala's negligence claim survives only against the named Officers for

unlawful arrest, Officers Archuleta and Amaya for excessive force, and the City for vicarious liability based on the alleged unlawful arrest and use of excessive force.

**B.    The City's Motion**

The City moves to dismiss Alcala's Ralph Act claim and three *Monell* claims on the ground that Alcala's allegations are legally insufficient to impose liability on the City. (City Mot. 11–18.)  The City also requests that the Court take judicial notice of a provision from the Garden Grove Police Department's policy manual.  (*Id.* at 15 n.1.) As the Court dismisses Alcala's Ralph Act claim above, it need not reach the City's additional arguments to dismiss that claim.  The Court therefore focuses its analysis below on the City's request for judicial notice and its arguments supporting dismissal of Alcala's *Monell* claims.

*1.    Request for Judicial Notice*

The City requests the Court to take judicial notice of a provision excerpted from the Garden Grove Police Department's policy manual to establish the adequacy of the City's police training and recruitment program at the time of Alcala's arrest.  (City Mot. 15 n.1; *see id.* Ex. A, Dkt. No. 46-1.)  The policy, however, bears a copyright date of March 20, 2024, which is later than the March 8, 2024 date when the incidents at issue in this case occurred.  (*See id.* Ex. A, at 1; FAC ¶¶ 36, 131.)  The City provides the Court no basis to find that the proffered version of the policy was the version in effect at the time of the events in question.  As such, the relevance of this policy provision is elusive.  *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (noting that courts may decline to take judicial notice of irrelevant documents); *see also Price v. Clifton*, No. 2:22-cv-00091-JLS (GJSx), 2024 WL 4720888, at *5 (C.D. Cal. Aug. 27, 2024) (declining to judicially notice police department manual bearing copyright date later than the date the events at issue took place), *report and recommendation adopted*, 2024 WL 4828700 (C.D. Cal. Nov. 19, 2024).  Accordingly, the Court **DENIES** the City's request for judicial notice.

       *2.*   Monell *Claims*

      As a general matter, municipal liability is not available in § 1983 actions under a respondeat superior theory.   *Monell*, 436 U.S. at 691.   Liability attaches to a municipality only when the "execution of a government's policy or custom . . . inflicts the [constitutional] injury." *Id.* at 694.   A plaintiff may establish municipal liability only if they plausibly show: (1) a city employee committed a constitutional violation "pursuant to a formal governmental policy" or a "longstanding practice or custom"; (2) the city employee who committed the violation was an official with "final policy-making authority"; or (3) an official with final policy-making authority "ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (citation modified); *see City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (recognizing that a municipality's failure to train its employees can be actionable as an improper "policy").   "[T]o withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere formulaic recitations of the existence of unlawful policies, conducts, or habits." *Doe #1 M.L. v. San Bernardino Sheriff Dep't*, 753 F. Supp. 3d 1024, 1029–30 (C.D. Cal. 2024).

      Alcala claims the City is liable to him under *Monell* because the City (1) has "unconstitutional policies, practices, and customs," (2) failed to adequately train its law enforcement officers amounting to deliberate indifference, and (3) ratified the Officers' conduct by its inaction.  (FAC ¶¶ 107, 121, 132, 145.)

      (i)   Unconstitutional custom, practice, or policy (Count 5)

      Alcala first claims the City is liable to him under *Monell* because the Officers acted pursuant to an "expressly adopted policy and practice and custom" of "employ[ing] excessive and unreasonable force" and "ignoring [the] medical care and needs of people seeking their aid."  (FAC ¶¶ 101, 103.)

      For a municipality to be liable for an improper express policy or custom under *Monell*, a plaintiff must show that the municipality has an express "policy statement,

ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell*, 436 U.S. at 690; *see Waggy v. Spokane County*, 594 F.3d 707, 713–14 (9th Cir. 2010) (noting that a plaintiff must allege and prove an express policy exists to challenge an express municipal policy or custom).  Although an official policy need not have "received formal approval through the body's official decisionmaking channels," a municipality cannot be liable under § 1983 unless an action taken under that express policy caused a constitutional tort.  *Monell*, 436 U.S. at 691.

Alcala fails to show that an improper express policy exists.  He asserts that the City has policies of using excessive force, ignoring medical needs, and discriminating based on race.  (*See* FAC ¶¶ 100–01, 103).  But nowhere in his pleading does Alcala identify any express policy promulgated and adopted by the City or its officers.  Instead, Alcala merely compiles a "speculative list of various customs, policies, and practices," without any attendant "allegations of underlying facts."  *Moore v. City of Orange*, No. 8:17-cv-01024-JVS (JCGx), 2017 WL 10518114, at *3 (C.D. Cal. Sept. 25, 2017) (quoting *A.E. ex rel. Hernandez v. City of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)).  Without allegations showing that such policies exist, explaining how they are constitutionally deficient, and how they amount to the City's deliberate indifference to its inhabitants' rights, Alcala fails to state a claim based on an improper express policy.  *See Waggy*, 594 F.3d at 713–14; *Herd v. County of San Bernardino*, 311 F. Supp. 3d 1157, 1168 (C.D. Cal. 2018).

Absent a formal governmental policy, a plaintiff must show a longstanding practice or custom that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law."  *City of St. Louis v. Prapotnik*, 485 U.S. 112, 127 (1988).  Alcala fails to do so.

An improper custom or practice claim "may not be predicated on isolated or sporadic incidents" but must instead "be founded upon practices of sufficient duration, frequency[,] and consistency that the conduct has become a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  Proof of one

or even two incidents of unconstitutional conduct is not sufficient to meet this standard. *Saved Mag. v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2021) (single incident of constitutional violation not sufficient to establish improper custom); *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents of unconstitutional assault not sufficient to establish improper custom).  Here, Alcala alleges a single instance of unconstitutional conduct that occurred on March 8, 2024.  (*See* FAC ¶¶ 19, 36.)  Other than this lone incident, Alcala identifies no other similar instances of unlawful conduct by Garden Grove police officers.  Alcala's allegations thus amount to only an "isolated or sporadic incident[]" that cannot form the basis of a *Monell* claim based on an improper custom or practice.  *Trevino*, 99 F.3d at 918.

Accordingly, the Court **GRANTS** the City's Motion and **DISMISSES** Alcala's fifth cause of action **WITH LEAVE TO AMEND**.

(ii)    Failure to train (Count 6)

Alcala next claims the City is liable under *Monell* for "fail[ing] to properly and adequately train" its police officers.  (FAC ¶ 118.)

A municipality's failure to train can serve as the basis for § 1983 liability in "limited circumstances," such as where its failure amounts to deliberate indifference. *City of Canton*, 489 U.S. at 387.  Absent circumstances where a failure to train is expressed in actual written or oral policy, *see Bd. of Cnty. Cmm'rs v. Brown*, 520 U.S. 397, 407 (1997), a plaintiff ordinarily must demonstrate "[a] pattern of similar constitutional violations by untrained employees," *Connick v. Thompson*, 563 U.S. 51, 62 (2011).  A single constitutional violation by an allegedly untrained employee is thus ordinarily insufficient to demonstrate deliberate indifference in a training program. However, a single violation may suffice if the need for training is "so obvious" and "so likely to result in the violation of constitutional rights" that "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible." *City of Canton*, 489 U.S. at 390.  This theory of single-incident liability applies in only "a narrow range of circumstances" where a constitutional violation is a "highly predictable

consequence of the failure to train." *Connick*, 563 U.S. at 63 (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 409).

Alcala's failure-to-train claim does not rest on a "pattern of similar constitutional violations by untrained employees" but instead on a theory of single-incident liability. *Connick*, 563 U.S. at 62; (*see, e.g.*, FAC ¶ 2 (specifying that this action arises from "a confrontation that occurred on or about March 8, 2024," with the Officers).) However, Alcala fails to establish that the facts of this case implicate the narrow range of circumstances where that theory would apply.

Although effecting arrests, using reasonable force, and distinguishing medical emergencies from intoxication may be "usual and recurring situations" for police officers, (FAC ¶ 121), Alcala does not plead facts showing that the training the City provided its officers in these areas was so patently deficient or non-existent that a constitutional violation was a "highly predictable consequence" of that training deficit. *Connick*, 563 U.S. at 64 (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 409). Nor does Alcala allege what training practices the City employed at the time the Officers allegedly violated Alcala's rights, how that training was constitutionally infirm, whether any policymaker was aware of the infirmity, or how the infirmity specifically caused Alcala harm. *See Waggy*, 594 F.3d at 714 (affirming dismissal of failure-to-train claim where plaintiff failed to allege facts indicating what training practices the county employed and what constitutionally mandated training was lacking); *Bagley v. City of Sunnyvale*, No. 16-cv-02250-LHK, 2017 WL 344998, at *16 (N.D. Cal. Jan. 24, 2017) (dismissing failure-to-train claim where plaintiff failed to allege "what training the Sunnyvale police officers received" or whether "any Sunnyvale policymaker was aware that the training was deficient"). Alcala's allegations that the City "failed to properly and adequately train" officers, (FAC ¶ 118), in using reasonable force and "properly identifying medical emergencies," (*id.* ¶ 120), are boilerplate, conclusory, and cannot suffice, *see Dougherty v. City of City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011).

Accordingly, the Court **GRANTS** the City's Motion and **DISMISSES** Alcala's sixth cause of action **WITH LEAVE TO AMEND**.

(iii)   Ratification (Count 7)

Alcala next claims the City is liable under a *Monell* ratification theory because it failed to discipline the Officers for their alleged misconduct.  (FAC ¶¶ 129–51.)

"Where a plaintiff alleges that a municipality's conduct runs afoul of [§ 1983] for the city's failure to discipline its employees, the claim is understood as one for ratification." *Rabinovitz v. City of Los Angeles*, 287 F. Supp. 3d 933, 967 (C.D. Cal. 2018).  To show ratification, a plaintiff must prove that "authorized policymakers approve[d] a subordinate's decision and the basis for it." *Prapotnik*, 485 U.S. at 127. The authorized policymaker must have "knowledge of the alleged constitutional violation," *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999), and must "ma[k]e a deliberate choice to endorse" the subordinate's actions, *Gillette*, 979 F.2d at 1348. "The mere failure to discipline" an employee for misconduct therefore "does not amount to ratification of their allegedly unconstitutional actions." *Sheehan v. City & County of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2013), *rev'd in part on other grounds*, 575 U.S. 600 (2015).

Alcala fails to state a ratification claim under *Monell*.  The only facts Alcala proffers are his "information and belief" allegations that "a final policymaker" "knew of[] and specifically approved" the Officers' alleged unconstitutional actions "[b]y doing nothing substantive in response to the incident."  (FAC ¶¶ 132, 144; *see also id.* ¶ 145 ("By their inactions to this incident, the authorized policymakers within the City have shown affirmative agreement with each of the actions of the Officer Defendants." (emphasis omitted).)  Alcala further surmises that "the final policymakers," including "the then-Chief of the [Garden Grove Police Department]," failed to "discipline[], reprimand[], retrain[], . . . suspend[], or otherwise penalize[]" the Officers.  (*Id.* ¶¶ 102, 141–42.)  These allegations are inadequate because they fail to demonstrate that any policymaker was actually aware of the Officers' alleged unconstitutional conduct.

*Caldwell v. City of San Francisco*, No. 12-cv-01892-DMR, 2020 WL 7643124, at \*18 (N.D. Cal. Dec. 23, 2020) (granting summary judgment on ratification theory where plaintiff failed to show the police chief or any other policymaker was aware of the allegedly unconstitutional conduct). Alcala's allegations are also deficient because they overlook that the City's simple acquiescence or "mere failure to discipline . . . does not amount to ratification." *Sheehan*, 743 F.3d at 1231 ("Ratification . . . generally requires more than acquiescence."); *Rabinovitz*, 287 F. Supp. 3d at 968 (finding plaintiff's evidence that officer "ha[d] never been disciplined" was "woefully inadequate to prove ratification").

As Alcala's ratification theory rests on nothing more than the City's alleged inaction and failure to discipline the Officers, he fails to state a cognizable ratification claim under *Monell*. Accordingly, the Court **GRANTS** the City's Motion and **DISMISSES** Alcala's seventh cause of action **WITH LEAVE TO AMEND**.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the Officers' Motion to Dismiss. (Dkt. No. 47.) Specifically, the Court **DISMISSES** Alcala's third, fourth, eighth, ninth, and twelfth causes of action **WITH LEAVE TO AMEND**. The Court further **DISMISSES** Alcala's tenth and eleventh causes of action as to Officers Britton, Garcia, and Kovacs **WITHOUT LEAVE TO AMEND** and **WITH PREJUDICE**. And the Court **DISMISSES** Alcala's thirteenth cause of action as to Officers Britton, Garcia, and Kovacs, to the extent it is based on Alcala's excessive force allegations, **WITHOUT LEAVE TO AMEND** and **WITH PREJUDICE**.

The Court further **GRANTS** the City's Motion to Dismiss, (Dkt. No. 46), and **DISMISSES** Alcala's fifth, sixth, seventh, eighth, ninth, and twelfth causes of action against the City **WITH LEAVE TO AMEND**. The Court further **DISMISSES** Alcala's thirteenth cause of action against the City for direct municipal liability **WITHOUT LEAVE TO AMEND** and **WITH PREJUDICE**.

The following causes of action survive the City's and Officers' Motions: (1) Count 1 for unlawful arrest against the Officers; (2) Count 2 for excessive force against Officers Archuleta and Amaya; (3) Counts 10 and 11 for assault and battery against Officers Archuleta and Amaya directly, and the City vicariously; and (4) Count 13 for negligence against the Officers for the alleged unlawful arrest, Officers Archuleta and Amaya for the alleged use of excessive force, and the City for vicarious liability based on the alleged unlawful arrest and use of excessive force.

If Alcala chooses to amend his complaint to cure the above-discussed deficiencies, he shall file a Second Amended Complaint by no later than **fourteen (14) days** from the date of this Order, in which case the City and the Officers shall answer or otherwise respond to the Second Amended Complaint within **fourteen (14) days** of Alcala's filing. If Alcala does not timely amend, then the causes of action the Court dismisses with leave to amend shall be deemed dismissed with prejudice as of the lapse of Alcala's filing deadline. In that event, the City and the Officers shall answer the surviving claims in the First Amended Complaint within **fourteen (14) days** of the lapse of Alcala's filing deadline.

**IT IS SO ORDERED.**

December 5, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**